Wayne **CHILTON**, Plaintiff,

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA,**
Defendant.

No. 6:99–CV–1004–ORL–28A.

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 19, 2000.

J.A. Jurgens, Scott M. Price, J.A. Jurgens, P.A., Longwood, FL, Paul M. Sullivan, Jr., Paul M. Sullivan, Jr., P.A., West Palm Beach, FL, for Wayne Chilton, plaintiff.

Ralph C. Losey, Alan Harrison Brents, Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Orlando, FL, for Prudential Insurance Company of America, a foreign insurer authorized to do business in the State of Florida, defendant.

## ORDER

ANTOON, District Judge.

Plaintiff Wayne Chilton brought this action against Prudential Insurance Company of America ("Prudential") claiming that he purchased a policy of disability insurance from Prudential which Prudential never provided. At issue is whether Chilton's claim, which is based solely on a Florida statute, is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended, or whether the statute is excluded from ERISA preemption by ERISA's savings clause on the basis that the statute constitutes a regulation of insurance. This case is currently before the Court on Prudential's Motion for Summary Judgment (Doc. 36, filed March 31, 2000) and the memorandum in support thereof (Doc. 37). For the reasons set forth below, the Court finds that the statute does not regulate insurance and that Chilton's claim thus is not saved from ERISA preemption. Accordingly, Prudential's motion for summary judgment is granted.

## I. FACTUAL BACKGROUND

The facts of this matter are largely undisputed. Chilton began employment with Invest Financial Corporation ("Invest") in April 1993. At the start of Chilton's employment, Invest provided Chilton with enrollment forms for various insurance plans, including one form for disability insurance. That form stated that employees could obtain disability insurance provided by Prudential but could elect not to obtain such coverage. The form further provided that "[t]he benefit available is 60% of monthly earnings" and that "[y]our premium for participation in the Group Long Term disability insurance plan is paid through after-tax salary deduction." (Exhibit A to Amended Complaint, Doc. 24). The enrollment form did not mention reduction of benefits due to benefits received from other sources.

After reading this form, Chilton completed and signed an "Optional Long Term Disability Worksheet," electing to purchase Group Long Term Disability Insurance via salary deduction (Exhibit B to Amended Complaint, Doc. 24). The Worksheet sets forth calculations for how much Chilton's premium would be; however, that Worksheet does not make any statements regarding the amount of coverage. (Exhibit B to Amended Complaint, Doc. 24). It is undisputed that these forms are the only forms through which Chilton alleges to have obtained disability insurance from Prudential, and the policy described in these forms was the only policy which Invest mentioned to Chilton (Chilton Dep., Doc. 51, at 16–17). Deductions were made by Invest from Chilton's salary for payment of premiums for disability insurance.

Prudential issued a group long-term disability policy for Invest employees. The policy was issued to Invest's parent company, Kemper Financial Services, Inc. ("Kemper") and will be referred to herein as "the Kemper policy." Although the Kemper policy is largely consistent with the forms Chilton reviewed and signed, the policy contains at least two seemingly contrary provisions. First, the Kemper policy states that the disability coverage is "non-contributory"—i.e., that employees are not required to pay for the coverage. (Kemper Financial Services, Inc. Life and Long

Term Disability Benefit Plans, attached as Exhibit B to Doc. 16, at 10, 33). Secondly, the Kemper policy provides not for a straight payment of 60% of monthly earnings, but for payment of "the lesser of" 60% of earnings or 70% of earnings minus an offset amount; the offset amount includes social security benefits received by the employee or his spouse or children. (Kemper Financial Services, Inc. Life and Long Term Disability Benefit Plans, attached as Exhibit B to Doc. 16, at 8, 10–11).

In March 1994, Chilton became eligible for long term disability benefits, and Prudential began paying benefits to Chilton equal to the "lesser of" 60% of his salary or 70% of his salary less offsets. In December 1998, Chilton reported to Prudential for the first time that his daughter received social security benefits.

In a letter, Prudential informed Chilton that because his daughter had received social security payments that had not been deducted, he had been overpaid a total of $33,375.57. (Exhibit 4 to Chilton Dep., Doc. 51). Prudential requested that Chilton submit a check for the amount of the overpayment. (Exhibit 4 to Chilton Dep., Doc. 51). The letter also stated that "[f]uture LTD benefits due after January 1, 1999 will be withheld pending our receipt of your reimbursement." (Exhibit 4 to Chilton Dep., Doc. 51). Chilton responded by alleging that he had been underpaid rather than overpaid benefits. (Exhibit 3 to Chilton Dep., Doc. 51). Chilton claimed, based on the enrollment form, entitlement to benefits equal to 60% of earnings without offsets rather than the 70% less offsets. The litigation described below followed shortly thereafter.

1. Suit was filed in the Circuit Court of the Eighteenth Circuit in and for Seminole County, Florida (Circuit Court Case No. 99–670–CA–15–B).

2. District Court Case No. 6:99–511–cv–Orl–18B.

## II. PROCEDURAL BACKGROUND

This action is the second filed by Chilton against Prudential. On March 26, 1999, Chilton filed a complaint in state court[1] against Prudential and Invest. In that complaint, Chilton raised claims of breach of written contract and negligence and sought injunctive relief. Prudential removed that case to this Court[2] and filed a motion to dismiss (Doc. 4 in Case No. 99–511) based on ERISA preemption. Invest also moved to dismiss based on ERISA preemption (Doc. 10 in Case No. 99–511). Both motions to dismiss requested dismissal of Chilton's state law claims without prejudice to Chilton to file an amended claim under ERISA. United States District Judge Kendall Sharp granted Prudential's Motion to Dismiss without prejudice on June 3, 1999.

Chilton did not file an amended complaint in Case No. 99–511. Instead, on July 21, 1999, he filed a new lawsuit, against Prudential only, in state court[3] seeking declaratory relief and alleging a violation of the Florida Insurance Code. Prudential removed that case to this Court (District Court Case No. 99–1004), which case is the instant matter. Prudential filed a motion to dismiss (Doc. 5) seeking dismissal with prejudice based on "res judicata, collateral estoppel, law of the case, and improper forum shopping." (Doc. 5, at 3).

Upon notification to this Court of the prior, related matter, this case was reassigned to Judge Sharp. Chilton filed a motion to remand (Doc. 10), contending that this Court lacked subject matter jurisdiction because there was "no relevant ERISA plan." (Doc. 10, at 10). On August 26, 1999, Judge Sharp granted Prudential's motion to dismiss "as to count I without prejudice with leave to amend."

3. The second suit was filed in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida (Circuit Court Case No. 99–CA–1474–15–E).

Chilton moved to stay entry of dismissal pending ruling on the Motion to Remand (Doc. 13). Judge Sharp denied the Motion to Remand on September 28, 1999.

On December 13, 1999, the Court entered a show cause order informing Chilton that he had eleven days to file an amended complaint or the case would be considered dismissed (Doc. 22). Chilton filed an Amended Complaint on December 20, 1999 (Doc. 24). The Amended Complaint states only one claim—an allegation that Prudential violated section 626.9541(1)(o)1., Florida Statutes (1998), part of the Unfair Insurance Trade Practices Act. Prudential did not move to dismiss that claim; instead, Prudential filed an Answer (Doc. 29), contending that Chilton has no cause of action under the Florida statute and raising ERISA preemption as an affirmative defense. Prudential then filed the instant summary judgment motion (Doc. 36), and this case was reassigned to the undersigned District Judge. Prudential's Motion for Summary Judgment (Doc. 36) was referred to United States Magistrate Judge Karla Spaulding for the issuance of a Report and Recommendation.

The United States Magistrate Judge submitted a Report and Recommendation (Doc. 68, filed October 10, 2000) recommending that Prudential's Motion for Summary Judgment be granted and that judgment be entered accordingly. Specifically, the Report concludes that Chilton's claim against Prudential is not preempted by ERISA but that summary judgment should be granted in favor of Prudential because Chilton has failed to present evidence to support an essential element of his state law claim.

Prudential has filed Objections (Doc. 74) to the Report insofar as it relates to ERISA preemption, and Chilton has responded (Doc. 77) to these objections. Chilton has filed objections (Doc. 73) to the Report's recommendation that summary judgment be granted, and Prudential has responded (Doc. 79) to Chilton's objec-

tions. Additionally, the parties have filed supplemental authority and other documentation regarding the Report and Recommendation (Docs. 75 and 76, filed October 25, 2000, Doc. 78, filed October 30, 2000, Docs. 80 and 81, filed October 31, 2000, Doc. 86, filed November 22, 2000). At a final pretrial conference held on November 17, 2000, the parties presented argument in open court regarding their positions on the summary judgment motion.

## III. DISCUSSION

### A. Summary Judgment Standards

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In ruling on a motion for summary judgment, "[t]he function of the court is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is an issue for trial.'" *Lockett v. Wal–Mart Stores, Inc.,* 2000 WL 284295, *2 (S.D.Ala. Mar.8, 2000) (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

## B. The Merits of Prudential's Motion

In his Amended Complaint, Chilton raises only one claim—that under section 626.9541(1)(o)1., Florida Statutes (1998),[4] and the civil remedy provision, section 624.155, Florida Statutes (1998),[5] Prudential collected premium payments for a policy that was not delivered. Chilton seeks to "recover from Prudential the amount of such benefits as Prudential would have provided Chilton in the past, if Prudential had provided insurance to Chilton in accordance with the terms described in ... the solicitation made by Prudential to Chilton to purchase such insurance." (Doc. 24, at 5). Additionally, Chilton alleges that he is "entitled to recover from Prudential in the future such amounts as the insurance whose purchase Prudential from Chilton [sic] would have provided, if Prudential had issued Chilton a policy conforming to [the solicitation]." (Doc. 24, at 5).

Essentially, Chilton contends that he never received the policy for which he signed up via the enrollment form and for which deductions were taken from his salary, and that he has never received any benefits under such a policy—a policy which he claims would provide benefits of 60% of his salary without any offsets for social security benefits. Chilton acknowledges receipt of benefits under the Kemper policy and concedes that the Kemper policy provides for offsets for social security benefits. However, Chilton contends that because that policy states that it is noncontributory, it was provided to him for free without a need to sign up and therefore is not the policy described in the enrollment form and funded by salary deductions. It is Chilton's position that the state law cause of action falls within ERISA's savings clause because the Florida statute upon which he relies "regulates insurance." Therefore, he argues, the state law cause of action is not preempted by ERISA.

Prudential, on the other hand, argues in its motion for summary judgment that Chilton's claim is preempted by ERISA and that even if his claim is not ERISA-preempted Chilton cannot prevail because he has not produced evidence that Prudential received the premium payments that were deducted from his salary. Prudential contends that Chilton is attempting to circumvent ERISA by couching his claim as a state-law claim, noting that there is a well-established body of ERISA case law holding that where informal documents conflict with the ERISA policy, the policy terms control. *See, e.g., Alday v. Container Corp.*, 906 F.2d 660 (11th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). Prudential argues that in the face of this case law, Chilton has chosen to bring a state law claim because he knows that he cannot prevail if he brings a cause of action under ERISA. Prudential contends that Chilton is merely contesting the amount of the benefits he

---

**4.** This section provides:

(1) Unfair methods of competition and unfair or deceptive acts.—The following are defined as unfair methods of competition and unfair or deceptive acts or practices:

\* \* \* \* \* \*

(o) Illegal dealings in premiums; excess or reduced charges for insurance.—

1. Knowingly collecting any sum as a premium or charge for insurance, which is not then provided, or is not in due course to be provided, subject to acceptance of the risk of the insurer, by an insurance policy issued by an insurer as permitted by this code.

**5.** This section provides in part:

624.155. Civil remedy

(1) Any person may bring a civil action against an insurer when such person is damaged:

(a) By a violation of any of the following provisions by the insurer:

1. Section 626.9541(1)(i), (o), or (x);

\* \* \* \* \* \*

(b) By the commission of any of the following acts by the insurer:

1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests
. . .

receives and that any state law cause of action is preempted by ERISA.

ERISA contains a civil enforcement scheme for recovery of benefits under employee benefit plans. It provides in part that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." 29 U.S.C. § 1132(a)(1)(B). As the Eleventh Circuit has noted, "in ERISA's civil enforcement section, Congress expressly provides the exclusive cause of action for the recovery of benefits governed under an ERISA plan. Accordingly, if state law claims implicate ERISA's preemption clause and fall within the scope of ERISA's civil enforcement section, then they are converted into federal claims." *Hall v. Blue Cross/Blue Shield*, 134 F.3d 1063, 1065 (11th Cir.1998) (citation omitted), *reh'g and reh'g en banc denied*, 158 F.3d 590 (11th Cir.1998).

ERISA contains a broad preemption provision which provides, "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). Subsection (b) of section 1144 contains the savings clause, which provides, with exceptions not relevant here, that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

In the instant case, reference to the ERISA plan already provided to Chilton is necessary to resolve the issue of whether another plan exists; accordingly, as applied here section 626.9541(1)(*o*)1., Florida Statutes, "relates to" an employee benefit plan and falls within the ERISA preemp-

tion clause in 29 U.S.C. § 1144(a). *Hall*. In *Hall*, the Eleventh Circuit affirmed the dismissal of state law fraud claims against a health insurer based on ERISA preemption, rejecting the plaintiff's "argument that her fraudulent inducement claims are entirely independent of the existence of Blue Cross's plan because she can prove her case in state court without ever referencing the plan's terms and provisions." In rejecting the plaintiff's "independence" argument, the *Hall* court opined:

> Hall fails to consider the practical consequences of litigating her claims in state court. Ultimately, no court will be able to determine whether Hall has been fraudulently induced without resorting to the written policy and assessing the truth of the agents' representations. Because the terms of Blue Cross's ERISA-governed policy are critical to the resolution of Hall's fraudulent inducement claims, her cause of action is sufficiently related to an employee benefits plan to fall within ERISA's preemptive scope.
>
> .   .   .   .   .
>
> ... [S]ubstantiating Hall's allegation that Blue Cross misrepresented the scope of its coverage for preexisting conditions ultimately requires a comparison between the agents' statements and the written policy. This necessary resort to the terms and provisions of Blue Cross's employee benefits plan plainly implicates ERISA. Hall's state law fraudulent inducement claims are therefore related to Blue Cross's administration of an ERISA-governed plan and, as such, are preempted.

134 F.3d at 1065–1066 (citations omitted). Here, like in *Hall*, it is necessary to look at the ERISA [Kemper] policy in order to resolve the issue of whether two plans were issued or should have been issued to Chilton. Hence, Chilton's claim is within the ERISA preemption clause. The same "practical consequences" of litigating state law claims are present here.

Although Chilton's claim falls within ERISA's preemption clause, the claim might still be exempted from preemption by the savings clause if section 626.9541(1)(o)1. "regulates insurance"; no such issue was present in *Hall* because apparently no argument was made in that case that the law of fraudulent inducement regulates insurance. The *Hall* court thus did not reach the savings clause prong of preemption analysis.

■ The determination of whether a state law falls within ERISA's savings clause and thus is saved from preemption involves a three-step analysis developed by the United States Supreme Court in *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) and its progeny. First, a court must consider the saving clause from a "common-sense" perspective to assess whether the law at issue "regulates insurance." Next, a court applies the three criteria gleaned from the McCarran–Ferguson Act, 15 U.S.C. § 1011, as to whether the law falls within the "business of insurance." The three "McCarran–Ferguson factors" are: (1)" 'whether the practice has the effect of transferring or spreading a policyholder's risk' "; (2) " 'whether the practice is an integral part of the policy relationship between the insurer and the insured' "; and (3) " 'whether the practice is limited to entities within the insurance industry.' " *Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. 2380 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)); *accord Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). All three factors need not be satisfied in order for a state law to be found to "regulate insurance"; rather, the factors are merely " 'considerations to be weighed.' " *UNUM Life Insurance Co. v. Ward,* 526 U.S. 358, 373, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) (quoting *Pilot Life,* 481 U.S. at 49, 107 S.Ct. 1549). Finally, a court must consider "the role of the saving clause in ERISA as

a whole." *Pilot Life,* 481 U.S. at 51, 107 S.Ct. 1549.

The three McCarran–Ferguson criteria were first applied to savings clause analysis in *Metropolitan Life,* in which the Supreme Court held that a state statute requiring minimum mental health benefits in employee health care plans was exempted from ERISA preemption by the savings clause. The Court found that all three McCarran–Ferguson factors were satisfied in the case before it and that therefore the state law regulated insurance and was not preempted by ERISA.

In *Pilot Life,* decided two years later, the Court examined whether state tort and contract claims which stemmed from purported improper processing of a claim for benefits under an employee benefit plan were preempted by ERISA. After concluding that the state claims clearly "related to" an ERISA plan, the *Pilot Life* Court proceeded to analysis under the savings clause. Addressing the state law "bad faith" and "tortious breach of contract" claims before it, the Court found that "a common-sense understanding of the phrase 'regulates insurance' does not support the argument that the Mississippi law of bad faith falls under the saving clause. A common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." 481 U.S. at 50, 107 S.Ct. 1549. Moving on to the McCarran–Ferguson factors, the Court found that none—or at best one—of those factors was satisfied. Hence, the Court found that the Mississippi state laws at issue did not regulate insurance and thus were not saved from ERISA preemption.

Interpreting the Supreme Court's decisions in *Metropolitan Life* and *Pilot Life,* the Eleventh Circuit has found that section 624.155, Florida Statutes, does not "regulate insurance" and therefore is not saved from ERISA preemption. In *Anschultz v. Connecticut General Life Insurance Co.,*

850 F.2d 1467 (11th Cir.1988), the plaintiff brought suit in state court under section 624.155, Florida Statutes, alleging that long term disability benefits had been wrongfully denied under a group employee benefit plan. The district court granted summary judgment based on ERISA preemption, and the Eleventh Circuit affirmed. Relying on *Metropolitan Life* and *Pilot Life* and analyzing the McCarran–Ferguson factors, the court concluded that section 624.155 was not within the ERISA savings clause. Although the court acknowledged that from a "common sense" perspective section 624.155 did appear to regulate insurance and that the statute met the third McCarran–Ferguson factor because it applied only to the insurance industry, the court found that section 624.155 did not satisfy the other two McCarran–Ferguson factors. The court found that "[s]ection 624.155 neither regulates nor defines the terms of the Plan between Connecticut General and Anschultz's previous employer. Instead, the statute ... provides, regardless of the substantive terms of the Plan, that an alleged breach of the Plan will allow a beneficiary (such as Anschultz) to pursue various civil remedies." 850 F.2d at 1469. The court thus concluded that the statute did " 'not seek to "regulate" the insurance industry by controlling specific practices or procedures of the business.' " 850 F.2d at 1469 (citation omitted). In reaching this conclusion, the *Anschultz* court stated that section 624.155 is not within ERISA's saving clause because it "fails to satisfy **all** of the criteria of the McCarran–Ferguson Act," 850 F.2d at 1469 (emphasis added). In *Swerhun v. Guardian Life Ins. Co.*, 979 F.2d 195 (11th Cir.1992), the court followed *Anschultz*, holding that sections 627.419 and 624.155, Florida Statutes, did not "regulate insurance" and therefore were not exempted from ERISA preemption.

In 1999, the United States Supreme Court decided *UNUM Life Insurance Co. v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), revisiting the issue of preemption and the McCarran–Ferguson factors and clarifying that all three of the factors need not be satisfied in order for a law to "regulate insurance." In *UNUM*, the plaintiff, Ward, sought to recover disability benefits under an ERISA-governed policy, but he submitted his claim outside the time limit provided in Unum's policy. Ward filed suit under ERISA's § 502(a) [29 U.S.C. § 1132(a) ] to recover benefits and argued that notice provided to his employer was sufficient to notify Unum under a California agency rule ("the notice-prejudice rule"). The California notice-prejudice rule at issue in Unum provided that " '[a] defense based on an insured's failure to give timely notice [of a claim] requires the insurer to prove that it suffered actual prejudice.' " *UNUM*, 526 U.S. at 366, 119 S.Ct. 1380 (quoting *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 760–761, 15 Cal.Rptr.2d 815, 845 (1993) (citations omitted)). The court addressed the issue of whether the notice-prejudice rule "regulates insurance" within the meaning of the savings clause of ERISA's § 514(b)(2)(A). Starting with the "common sense" approach, the Supreme Court concluded that as a matter of common sense the rule regulates insurance because it is "a regulation that homes in on the insurance industry and does 'not just have an impact on [that] industry.' " *UNUM*, 526 U.S. at 368, 119 S.Ct. 1380 (quoting *Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549).

Proceeding to the McCarran–Ferguson factors, the Court found that the notice-prejudice rule met the second and third factors; the Court concluded that the rule was an "integral part of the policy relationship" because it "dictates the terms of the relationship" and that the rule was limited to the insurance industry. Finding these two factors satisfied, the Court did not address the first factor—whether the rule had the effect of spreading a policyholder's risk. The Court rejected Unum's argument that all three McCarran–Ferguson

factors had to be satisfied in order for a state law to be found to "regulate insurance"; the Court clarified that the factors are " 'considerations to be weighed' " and " '[n]one ... is necessarily determinative in itself.' " 526 U.S. at 373, 119 S.Ct. 1380 (quoting *Pilot Life,* 481 U.S. at 49, 107 S.Ct. 1549, and *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)). The factors are to be used as "checking points or 'guideposts, not separate essential elements ... that must be satisfied' to save the State's law." 526 U.S. at 374, 119 S.Ct. 1380 (quoting *Cisneros v. UNUM Life Ins. Co.,* 134 F.3d 939, 946 (9th Cir. 1998)).

After analyzing these factors, the *UNUM* Court rejected Unum's contention that the notice-prejudice rule was preempted as contrary to a plan term, noting that the Court had "repeatedly held that state laws mandating insurance contract terms are saved from preemption under § 1144(b)(2)(A)." 526 U.S. at 375, 119 S.Ct. 1380 (citing *Metropolitan Life,* 471 U.S. at 758, 105 S.Ct. 2380, and *FMC Corp. v. Holliday,* 498 U.S. 52, 64, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)). Additionally, the Court found no need to address "the question whether § 502(a) provides the sole launching ground for an ERISA enforcement action" and thus found that the issue of whether ERISA "preempts any action for plan benefits brought under state rules such as notice-prejudice"—which, it noted, was discussed in *Pilot Life*—was not implicated in the case before it. 526 U.S. at 376, 119 S.Ct. 1380. The Court noted that Ward had sued under section 502(a) of ERISA "for benefits due, and seeks only the application of saved state insurance law as a relevant rule of decision in his § 502(a) action." *Id.* at 377 n. 7, 119 S.Ct. 1380.

Since *UNUM,* courts have continued to apply the common sense and McCarran–Ferguson analysis to ERISA preemption and savings issues, with somewhat differing results and with different views on the scope and importance of the *UNUM* decision. Some courts have viewed *UNUM* as a significant change in the Supreme Court's approach to ERISA preemption and savings clause analysis which casts doubt on pre-*UNUM* case law, whereas others have concluded that *UNUM* had little, if any, effect on the framework established in *Metropolitan Life* and *Pilot Life. Compare, e.g., Hill v. Blue Cross Blue Shield,* 117 F.Supp.2d 1209, 1211 (N.D.Ala.2000) (stating that the Supreme Court in *UNUM* "charted a[new] course under which [the plaintiff] can proceed with his state law claim in the forum which he chose"), *with Norris v. Continental Cas. Co.,* 2000 WL 877040, *2 (E.D.Pa. June 28, 2000) ("*UNUM* applied the same analysis as articulated in *Pilot Life Ins.* to California's notice-prejudice rule .... *UNUM* did not alter or undermine *Pilot Life.*"), *and Nations Personnel of Texas, Inc. v. Am. Med. Sec.,* 2000 WL 341256, *2 & n. 9 (N.D.Tex. Mar. 31, 2000) (noting that "the Supreme Court in *UNUM* only reiterated its prior precedent" and that "*UNUM* did not create any new law for interpreting the 'regulate insurance' savings clause, but rather cited existing law"). However, what is clear from *UNUM* is that not all of the McCarran–Ferguson criteria need to be met in order for a law to "regulate insurance."

In *Bridges v. Provident Life and Accident Insurance Co.,* 121 F.Supp.2d 1369 (M.D.Fla.2000) (Hodges, S.J.), the court held that *UNUM* does not alter the Eleventh Circuit's holdings in *Anschultz* and *Swerhun* that the bad faith statute—section 624.155, Florida Statutes—does not "regulate insurance" and thus is not saved from ERISA preemption. The *Bridges* court stated:

> While *UNUM* may have refined the savings clause analysis by using the McCarran–Ferguson factors as a "guidepost" rather than requiring each factor to be determinative by itself, the analysis in *Anschultz* is not at odds with *UNUM.* To the contrary, after analyzing

the McCarran–Ferguson criteria the *Anschultz* court found two of the three factors were not met and based on that determination concluded that 624.155 did not satisfy the McCarran–Ferguson test. Therefore, by outlining the reasons whether 624.155 did or did not satisfy the requisite test the *Anschultz* decision still reflects good law.

Accordingly, the Court rejects Plaintiff's argument that Unum requires the Court to ignore pre-*UNUM* cases such as *Anschultz*. Consistent with the court's decision in *Anschultz* this Court concludes that Florida Statute § 624.155 does not fall within ERISA's savings clause and, accordingly, is preempted by ERISA. . . .

121 F.Supp.2d at 1373. *But see Hill v. Blue Cross Blue Shield,* 117 F.Supp.2d 1209 (N.D.Ala.2000) (remanding an Alabama bad faith claim to state court; reading *UNUM* to overturn the Eleventh Circuit's decision in *Amos v. Blue Cross–Blue Shield of Alabama,* 868 F.2d 430 (11th Cir.1989), insofar as it held that Alabama's law of bad faith was preempted by ERISA).

■ This Court agrees with the *Bridges* court that the *Anschultz* analysis of the McCarran–Ferguson factors remains good law even though the Supreme Court held in *UNUM* that not all three factors need be met. Applying the common sense test, the McCarran–Ferguson factors, and *UNUM* to the instant claims brought under section 626.9541(1)(*o*)1., Florida Statutes, this Court concludes that Chilton's claim is preempted by ERISA.

From a common sense perspective, section 626.9541(1)(*o*)1. arguably regulates insurance because it is contained within the Florida Insurance Code and the subpart regarding "Unfair Insurance Trade Practices." Additionally, this section clearly applies only to the insurance industry and thus meets the third McCarran–Ferguson factor. *Cf. Anschultz,* 850 F.2d at 1468–1469. However, section 626.9541(1)(*o*)1. does not meet the first McCarran–Fergu-

son criterion; it does not serve to spread policyholder risk but instead provides, in conjunction with section 624.155, for a civil remedy when an insurer collects a premium without providing a policy. Finally, application of the second factor is somewhat circuitous—the statute may be said to form an integral part of the insurer-insured relationship in the sense that if the insurer has failed to issue a policy, there actually is no insurer-insured relationship. The Court finds that, considering the common sense test and the McCarran–Ferguson factors as a whole, the provision of a civil remedy for failure to issue a policy does not constitute a regulation of the insurance industry any more than does provision of a civil remedy for bad faith failure to settle claims. *Cf. Anschultz,* 850 F.2d at 1469; *MIDWEST SEC. LIFE INS. CO. v. STROUP,* 2000 WL 765061 (Ind. June 14, 2000) (finding state law breach of contract and bad faith claims preempted by ERISA, noting that "[t]he essence of the claims is a failure to supply benefits under the plan" and that the contract and tort claims failed to satisfy the first or second McCarran–Ferguson factors; such claims did not spread risk, did not define the terms of the relationship, and merely allowed for recovery of damages). Therefore, section 626.9541(1)(*o*)1., Florida Statutes, is not within ERISA's saving clause and Chilton's state law claim is preempted.

Moreover, even if the common sense approach and the McCarran–Ferguson factors had weighed in favor of finding that the statute "regulates insurance," this Court would, as directed by the Supreme Court in *Pilot Life,* look to the overall purpose of the ERISA savings clause and would be compelled to conclude that the state law cause of action raised by Chilton is preempted by ERISA. In *Pilot Life,* even after soundly rejecting the argument that the claims regulated insurance under both the "common sense" approach and the McCarran–Ferguson factors, the Court emphasized that it was "obliged in inter-

preting the saving clause to consider not only the factors by which [it was] guided in *Metropolitan Life,* but also the role of the saving clause in ERISA as a whole." 481 U.S. at 51, 107 S.Ct. 1549.

The *Pilot Life* Court emphasized the importance of ERISA's civil enforcement scheme and looked to Congress's intent in enacting the scheme. The Court opined:

> In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statue as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."

481 U.S. at 54, 107 S.Ct. 1549 (citation omitted). The Court also noted that it did not address in *Metropolitan Life* "whether Congress might clearly express, through the structure and legislative history of a particular substantive provision of ERISA, an intention that the federal remedy provided by that provision displace state causes of action." 481 U.S. at 57, 107 S.Ct. 1549. The sweeping language of *Pilot Life* was not undone by *UNUM,* which addressed not a state remedy but a state decisional rule being applied to a claim brought under ERISA.[6] Indeed, the *UNUM* Court also examined whether the

notice-prejudice rule conflicted with ERISA even after concluding that the notice-prejudice rule "regulated insurance" under the common sense test and application of the McCarran–Ferguson factors. After *UNUM,* Congressional intent remains the starting and ending point in ERISA preemption analysis and is not to be overtaken by formulaic application of factors.

In another post-*UNUM* case, the Fifth Circuit relied on *Pilot Life* and *UNUM* and concluded that certain provisions of a Texas statute were preempted by ERISA. In *Corporate Health Insurance, Inc. v. Texas Dep't of Insurance,* 215 F.3d 526 (5th Cir.), *reh'g and reh'g en banc denied,* 220 F.3d 641 (5th Cir.), *petition for cert. filed,* 69 U.S.L.W. 3317, ── U.S. ──, ── S.Ct. ──, ── L.Ed.2d ── (Oct. 24, 2000), the court examined a state law which, inter alia, "established procedures for the independent review of health care determinations to decide whether they were appropriate and medically necessary." 215 F.3d at 531. The *Corporate Health* court found that the law met the common-sense test and the second and third McCarran–Ferguson factors. However, the Court nevertheless found that the independent review provisions were preempted, noting, "Our analysis does not end here, however, because even if the provisions would otherwise be saved, they may nonetheless be preempted if they conflict with a substantive provision of ERISA." 212 F.3d at 538 (citing *UNUM* ). The court continued:

> Here, the independent review provisions do not create a cause of action for the denial of benefits. They do, however, establish a quasi-administrative procedure for the review of such denial and bind the ERISA plan to the decision of

**6.** In a footnote, the *UNUM* court noted that "Ward has sued under § 502(a)(1)(B) for benefits due, and seeks only the application of saved state insurance law as a relevant rule of decision in his § 502(a) action." 526 U.S. at 377 n. 7, 119 S.Ct. 1380. The Court thus found it unnecessary to address the Solicitor General's argument that *Pilot Life* did not itself establish that a state law which provides a state remedy is preempted even if it "regulates insurance." *Id.*

the independent review organization. **This scheme creates an alternative mechanism through which plan members may seek benefits due them under the terms of the plan—the identical relief offered under § 1132(a)(1)(B) of ERISA. As such, the independent review provisions conflict with ERISA's exclusive remedy and cannot be saved by the saving clause.**

215 F.3d at 539 (emphasis added) (footnotes omitted).[7] *See also Hall*, 134 F.3d at 1065; *Clancy v. Employers Health Ins. Co.*, 101 F.Supp.2d 463, 467 (E.D.La.2000) ("*UNUM* does not change the proposition that, in considering whether a particular state law is saved from preemption, a court must consider the role of the saving clause as a whole ... or that § 502(a) provides the exclusive remedy for enforcing ERISA.... While [the statute], like the notice-prejudice rule, certainly does seem to be directed exclusively at the insurance industry and arguably forms an integral part of the insurer-insured relationship, [the statute], unlike the notice-prejudice rule, creates a 'supplemental' state law remedy that conflicts with ERISA § 502(a)'s exclusive remedy provision.").

Even more so than the provisions at issue in *Corporate Health*, section 626.9541(1)(*o*)1., Florida Statutes, creates an "alternative mechanism" for seeking benefits under an employer-provided plan and therefore is not excluded from preemption by ERISA's savings clause. Chilton's entire state law claim stems from and hinges on the enrollment form which his employer provided him. Chilton may not circumvent the ERISA civil enforcement scheme through creative pleading. Chilton's claim for a policy which allegedly was not provided is nothing more than alternative pleading seeking to establish the terms of a policy which Chilton obtained or allegedly obtained through his employer.

## IV. CONCLUSION

In sum, section 626.9541(1)(*o*)1., Florida Statutes, does not regulate insurance under the common sense and McCarran–Ferguson framework. The Florida statute does not instruct insurers what to include in their plans as did the provision at issue in *Metropolitan Life*, nor does it provide for a state decisional rule to be applied to an ERISA claim as in *UNUM*. Chilton's claim is akin to the claims addressed in *Pilot Life*, and although the instant statute—unlike the state common law on which the *Pilot Life* claims were based—is limited to the insurance industry, the satisfaction of that "guidepost" alone is not enough to bring the statute within the ambit of "insurance regulation."

Additionally, because Chilton's state law claim conflicts with or seeks to supplement the exclusive civil enforcement mechanisms of ERISA, it would not be saved from preemption as a regulation of insurance even if the common sense and McCarran–Ferguson analysis had weighed in favor of a finding that the statute "regulates insurance." The statute provides a potential remedy for insureds—a remedy which, where an ERISA plan is applicable, conflicts with and/or seeks to supplement the remedies already provided for by Congress.

For these reasons, Chilton's Florida statutory claim is preempted by ERISA. Although Chilton has been given several opportunities to raise an ERISA claim, he has declined to do so. Accordingly, Prudential is entitled to summary judgment.

In accordance with the foregoing analysis, it is **ORDERED** and **ADJUDGED** as follows:

**7.** In a footnote, the *Corporate Health* court noted that the *UNUM* Court had "noted the federal government's change in position since *Pilot Life* on the issue of whether a provision in conflict with ERISA's enforcement provision is nevertheless saved by the saving clause" but that the *UNUM* Court did not readdress that issue in *UNUM* because it was not essential to resolution of *UNUM*. 215 F.3d at 539 n. 59.

1. Prudential's Motion for Summary Judgment (Doc. 36) is **GRANTED.**

2. All pending motions are **DENIED as moot.**

3. The Clerk is directed to enter judgment for Prudential and thereafter to close the file.