**Jasmine JABOUR, Plaintiff,**

v.

**CIGNA HEALTHCARE OF CALIFORNIA, INC.,
Defendant.**

**No. CV01–01578ABC(AJWX).**

United States District Court,
C.D. California.

Aug. 22, 2001.

---

Timothy D. Reuben, Esq., Daniel A. Windler, Esq., Reuben & Novicoff, Beverly Hills, CA, for Plaintiff.

Vincent D'Angelo, Esq., Shaighn Kim, Esq., Wilson, Elser, Moskowitz, etc., Los Angeles, CA, for Defendant.

### ORDER RE: MOTION TO DISMISS; FED. R. CIV. PRO. 12(B)(6)

COLLINS, District Judge.

In a case involving a claim for benefits, as well as six claims for alleged failures to supply requested information, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, Plaintiff (without opposition from Defendant and therefore with leave of Court) filed a First Amended Complaint ("FAC") which added a claim for tortious breach of the implied covenant of good faith and fair dealing ("implied covenant claim") under California common law. On July 27, 2001, Defendant filed a Motion to Dismiss (the "Motion") the implied covenant claim. Plaintiff has opposed. The Court decides the Motion without need for oral argument. *See* Fed. R. Civ. Pro. 78; Local Rule 7.11. Accordingly, the noticed hearing on August 27, 2001 is hereby VACATED. For reasons detailed below, the Mo-

tion is hereby GRANTED. Plaintiff's Eighth Claim for Relief is hereby DISMISSED.

## I. PROCEDURAL HISTORY

Plaintiff JASMINE JABOUR ("Plaintiff," or "Jabour") commenced the instant civil suit with a Complaint filed on February 16, 2001 naming sole Defendant CIGNA HEALTHCARE OF CALIFORNIA, INC. ("Defendant," or "CIGNA"). The initial Complaint stated one cause of action (the First Claim for Relief) for improper denial of benefits under 29 U.S.C. § 1132(a)(1)(B), and five causes of action (the Second to Sixth Claims for Relief) for failure to respond to Plaintiff's various requests for information under 29 U.S.C. §§ 1132(c) and 1133. *See* Complaint ¶¶ 30–48. Plaintiff initially sought recovery of all benefits due, along with prejudgment interest, penalties for alleged failures to respond to information requests, and attorneys' fees and costs. *See* Prayer.

Following three stipulations extending the time for Defendant to respond to the Complaint, on April 11, 2001 Defendant CIGNA filed an Answer. Counsel participated in an early meeting of counsel at which time they exchanged preliminary discovery and witness lists. As was its stated intention in the joint report of early meeting of counsel filed on May 24, 2001, on June 7, 2001 Plaintiff filed a motion for leave to file a first amended complaint. Defendant did not oppose. Accordingly, on July 9, 2001 the Court granted leave to amend, and deemed the FAC filed as of that date. The FAC includes a sixth cause of action (the Seventh Claim for Relief) for failure to respond to a request for information, and a wholly new cause of action (the Eighth Claim for Relief) for a tortious breach of the implied covenant.

It is this implied covenant claim to which Defendant's Motion to Dismiss, filed July 27, 2001, is addressed. Defendant seeks dismissal of the Eighth Claim for Relief. Plaintiff's Opposition was submitted on August 13, 2001, and Defendant filed a Reply on August 17, 2001.

## II. LEGAL STANDARD ON A MOTION TO DISMISS UNDER RULE 12(B)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *See* Fed. R. Civ. Pro. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). "The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988); *accord Gilligan,* 108 F.3d at 248 ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'").

The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *See Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998). Moreover, the complaint must be read in the light most favorable to the plaintiff. *See id.* However, the Court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations.

*See, e.g., Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

Moreover, in ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (*e.g.,* facts presented in briefs, affidavits, or discovery materials). *See Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994). A court may, however, consider exhibits submitted with the complaint. *See id.* at 453–54. Also, a court may consider documents which are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id.* at 454. Further, it is proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *Mir, M.D. v. Little Co. of Mary Hospital,* 844 F.2d 646, 649 (9th Cir.1988).

Lastly, a Rule 12(b)(6) motion "will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled." Schwarzer, Tashima, and Wagstaffe, *Civil Procedure Before Trial* § 9:230 (2000). "It need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1104 (D.C.Cir.1985); *see also Doss v. South Central Bell Telephone Co.,* 834 F.2d 421, 425 (5th Cir.1987) (demand for improper remedy not fatal if claim shows that the plaintiff is entitled to a different form of relief).

### III.  FACTUAL ALLEGATIONS [1]

Plaintiff's FAC asserts that she is a vested participant and a beneficiary in an employee benefit healthcare plan underwritten and administered by Defendant CIGNA, in which she enrolled while she was employed by Dic Entertainment L.P., a subsidiary of Disney Worldwide Services, Inc. *See* FAC ¶¶ 4–6. Plaintiff claims to have become a member of the Cigna Plus Plan (Group No. 2404145/ BHYL–39), an employee benefit healthcare plan which is subject to ERISA. *See id.* ¶¶ 6–7.

The FAC alleges that at the age of six Plaintiff was involved in an unspecified accident which fractured her nose and left her with a deviated septum. This deviation allegedly caused her to have great difficulty breathing, and severe headaches. After years of treating her symptoms and her condition with various medications, as well as acupressure treatments, Plaintiff consulted a physician specializing in nose and throat medicine as well as reconstructive surgery about a possible surgical solution to her condition. This physician (George T. Boris, M.D.) ran various tests on Plaintiff on or about March 16, 1999, and concluded in her return visit, on or about March 25, 1999, that Plaintiff needed surgery (a septoplasty). *See* FAC ¶¶ 8–11.

Plaintiff asserts that Dr. Boris qualifies under the terms of the Cigna Plus Plan ("the Plan") as an "out-of-network" provider, and that she should therefore have been eligible for 70% reimbursement of the costs of the office visits on March 16 and March 25, 1999. The FAC also asserts that under the Plan surgery performed by an out-of-network provider is reimbursed at a 70% rate if Plan administrators authorize the out-of-network care prior to the surgery. When approval is not received prior to surgery, Plaintiff claims that the Plan still allows for reimbursement of 35% of surgical expenses (both percentages are of the expenses after a deductible is subtracted). *See* FAC ¶ 13.

Plaintiff claims that soon after her consultation with Dr. Boris, she telephoned

---

1. The Court assumes the truth of all the allegations in the FAC.

Defendant's member services department to notify the Plan that she was planning to go forward with a septoplasty performed by Dr. Boris. She asserts that she was informed by CIGNA that before she could receive the maximum available benefit (presumably 70% of the costs after deductible, though not specified) she would have to seek a second opinion from an "in-network" specialist. *See* FAC ¶ 14.

Plaintiff alleges that on April 16, 1999, she consulted Gary S. Bellack, M.D., an "in-network" ear, nose, and throat specialist, and that Dr. Bellack confirmed the diagnosis given by Dr. Boris and that septoplasty was an appropriate course of treatment. *See* FAC ¶ 15. In the days following this consultation, Plaintiff alleges that staff in Dr. Boris' office contacted Defendant's member services department to advise them of the upcoming septoplasty, and were told that it would be reimbursed at the 70% "maximum benefit" level. Plaintiff claims she would never have undergone surgery if it had not been represented to Dr. Boris that 70% of the costs would be covered. *See id.* ¶ 16.

The FAC alleges that Dr. Boris performed the septoplasty surgery on Plaintiff on or about April 26, 1999. Plaintiff claims that none of the costs incurred in that surgery have been reimbursed, either to Plaintiff or to Dr. Boris, to either of the other physicians involved in the surgery (Vijay Gyan, M.D., anesthesiologist, Ezra E. Kleiner, M.D., pathologist), or to the facility in which surgery was performed (Culver City Ambulatory Center). Further, Plaintiff asserts that Dr. Boris has never received payment for either the March 15, 1999 or the March 26, 1999 consultations. In addition, Plaintiff claims that she has received little or no written information on the status of her outstanding benefits claims from the Defendant, and that her repeated oral and written requests for further information on these claims have gone unheeded by Defendant. *See* FAC ¶¶ 17–31. Plaintiff asserts that in September, 2000, CIGNA employee Janice Johnson informed her for the first time (via telephone) that her claims had been denied because the septoplasty was not medically necessary; then a few days later Johnson allegedly told Plaintiff (again by telephone, not in writing) it was because her discomfort was a pre-existing condition. *See id.* ¶ 32.

On the basis of these allegations, Plaintiff has included in the FAC not only a claim for benefits by a participant or beneficiary per 29 U.S.C. § 1132(a)(1)(B) and several claims for penalties based on an alleged lack of response to Plaintiff's requests for information per 29 U.S.C. §§ 1132(c) and 1133, but also a claim under California state law for tortious breach of the implied covenant of good faith and fair dealing. *See* FAC ¶¶ 33–58. Specifically, Plaintiff claims that CIGNA unreasonably and without proper cause failed and refused to conduct an adequate investigation into the facts which gave rise to the claim(s) for benefits which had been presented, unreasonably interpreted the Plan in a manner calculated to deny benefits due to the Plaintiff and refused to pay for medical charges incurred, and unreasonably delayed making *any* determination as to the availability of benefits under the Plan. *See* FAC ¶ 56. On this basis, Plaintiff seeks not only recovery of benefits (at least $17,500.00), pre-judgment interest, statutory penalties, attorneys' fees, and costs, but also emotional distress and punitive damages based on the alleged tortious conduct. *See* Prayer.

## IV. DISCUSSION

Defendant argues that under the clear precedents of the United States Supreme Court and this Circuit, contract-based claims such as tortious breach of the im-

plied covenant of good faith and fair dealing are preempted by ERISA, and that extra-contractual claims or remedies are therefore disallowed in any claim governed by ERISA. In response, Plaintiff argues that those precedents have been undermined by the United States Supreme Court's recent decision in *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), which gave new life to the ERISA "saving clause" as a haven for those state laws which "regulate insurance."

### A. The Legal Backdrop on "Bad Faith" Claims in ERISA Cases

■ The parties agree that prior to the issuance of the decision in *UNUM Life Ins. Co. v. Ward* (the "*Ward* decision"), claims for breach of the implied covenant of good faith and fair dealing had been found to be preempted by ERISA, such that these claims could not survive where a claim was governed by ERISA and by the exclusive claims and remedies provided therein. The United States Supreme Court found in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), for instance, that such a "bad faith" claim under Mississippi law was preempted because it "relate[d] to" an employee benefit plan (29 U.S.C. § 1144(a)), and was not saved from preemption by being a state law that "regulate[d] insurance" (29 U.S.C. § 1144(b)(2)(A)).[2] *See id.* at 45–57, 107 S.Ct. 1549. The Court concluded that no such claim could therefore be made against an ERISA plan. *See id.*

■ The Court's reasoning for this decision was simple. First, the Court noted that there could be no dispute that any "bad faith" claim premised on the alleged non-payment of benefits "relates to" employee benefit plans in the manner contemplated by 29 U.S.C. § 1144(a). *See id.* at 47, 107 S.Ct. 1549. Second, the Court determined that the "bad faith" claim was not "saved" from preemption under the two-step analysis outlined in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The Court first found that this law did not fit an overall "commonsense understanding" of the phrase "regulates insurance" (step one):

> Certainly a common-sense understanding of the phrase "regulates insurance" does not support the argument that the

2. The ERISA preemption clause (29 U.S.C. § 1144(a)) reads in part as follows: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede and any all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." The ERISA "saving clause" (29 U.S.C. § 1144(b)(2)(A)) then limits the expansive preemptive force of ERISA: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance ...." However, ERISA then delimits the exclusionary power of this "saving clause" somewhat by operation of the so-called "deemer clause" (29 U.S.C. § 1144(b)(2)(B)) which reads in pertinent part: "Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." The Court summarized the "mechanics" of these sections:

> If a state law "relate[s] to ... employee benefit plan[s]," it is pre-empted.... The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance." ... The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company.

*Pilot Life*, 481 U.S. at 45, 107 S.Ct. 1549 (alterations in original).

Mississippi law of bad faith falls under the saving clause. A common-sense view of the word "regulates" would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry. Even though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law....

*Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549. The Court further determined that the McCarran–Ferguson Act factors [3] did not support an assertion that the "bad faith" law in Mississippi was one which "regulate[d] insurance" (step two). *See id.* at 50–51, 107 S.Ct. 1549. The Court found that it did not (1) spread policyholders' risk, nor (2) define terms of the relationship between insurers and insureds. Further, although (3) the "bad faith" claim was "associated with the insurance industry," it had "developed from general principles of tort and contract law" in Mississippi. At most, therefore, only the third factor favored non-preemption *See id.*

■ Finally, the Court noted that the claim at issue sought remedies "for the improper processing of a claim for benefits under an ERISA-regulated plan," and therefore concluded that "our understanding of the saving clause must be informed by the legislative intent" of the ERISA civil enforcement provision(s) (29 U.S.C. § 1132(a)). *See id.* at 51–52, 107 S.Ct. 1549. Finding that it was clear that Congress had intended the civil enforcement provision(s) to be exclusive, the Court interpreted this policy choice as further support for its conclusion that a "bad faith"

claim (which would stand outside the enforcement provision(s)) for improper processing of benefits under an ERISA-regulated plan was preempted by 29 U.S.C. § 1144. *See id.* at 52–57, 107 S.Ct. 1549. "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 54, 107 S.Ct. 1549.

The Ninth Circuit has also consistently and repeatedly held that state law claims for breach of the implied covenant of good faith and fair dealing under California law are preempted by the expansive scope of ERISA, and are not excepted from that preemption under the ERISA saving clause. *See McBride v. PLM International, Inc.*, 179 F.3d 737, 744–45 (9th Cir. 1999); *Bast v. Prudential Ins. Co. of America*, 150 F.3d 1003, 1007–08 (9th Cir. 1998); *Parrino v. FHP, Inc.*, 146 F.3d 699, 703–04 (9th Cir.1998); *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 493–94 (9th Cir.1988) (en banc). These decisions make clear that for a claim of breach of the implied covenant of good faith and fair dealing to be sustainable against an ERISA-governed plan, there must have been a significant shift in the law, rendering all of these prior decisions either distinguishable or inapplicable.

### B. The Ward Decision and Interpretations Thereof

Plaintiff claims that the *Ward* decision has worked just this sort of transformation of the law on preemption of state causes of action under the ERISA statutes. In

---

**3.** The McCarran–Ferguson factors are (1) whether the practice has the effect of transferring or spreading policyholder risk, (2) whether the practice is an integral part of the policy relationship between an insurer and an insured, and (3) whether the practice is limited to the insurance industry. *See, e.g., Pilot Life*, 481 U.S. at 48–51, 107 S.Ct. 1549.

*Ward,* the United States Supreme Court affirmed the Ninth Circuit's conclusion that the California "notice-prejudice" rule (which provides that a defense based on an insured's failure to give timely notice of a claim requires an insurer to prove it suffered substantial, actual, prejudice resulting from the delay) is a state law which "regulates insurance" and thus escapes preemption by virtue of the saving clause. *See Ward,* 526 U.S. at 367–75, 119 S.Ct. 1380.

The Court largely deferred to the Ninth Circuit's initial finding that this law "regulates insurance" as a matter of common sense. *See id.* at 368, 119 S.Ct. 1380 ("We do not normally disturb an appeals court's judgment on an issue so heavily dependent on analysis of state law."). "[T]he Ninth Circuit properly concluded that notice-prejudice is a rule of law governing the insurance relationship distinctively." *Id.* at 372, 119 S.Ct. 1380. The Court then went on to consider the McCarran–Ferguson factors, and clarified that a state regulation need not satisfy all *three* of these factors in order to "regulate insurance" under the saving clause. *See id.* at 373, 119 S.Ct. 1380. The Court declined to consider or decide the effect of the first of the three factors (transfer/spread of policyholder risk). However, the Court agreed with the Ninth Circuit that the remaining two factors favored exemption of the "notice-prejudice" rule under the ERISA saving clause. Specifically, the rule was "an integral part of the policy relationship between the insurer and the insured," and also it was "limited to entities within the insurance industry." *Id.* at 374–75, 119 S.Ct. 1380. "The rule 'does not merely have an impact on the insur-

ance industry; it is aimed at it.'" *Id.* at 375 (citation omitted).

In reliance on this decision, Plaintiff argues that the claim of "bad faith" (i.e., breach of the implied covenant of good faith and fair dealing) should be bracketed with the "notice-prejudice" rule as an example of a state law which "regulates insurance" and which thus escapes the preemptive reach of the ERISA statutes. Plaintiff asserts that under both the "common sense" test and the McCarran–Ferguson Act factors, as their applications were re-stated and clarified in *Ward,* a "bad faith" claim should escape ERISA preemption. *See* Opposition at 5–9. Plaintiff also asserts that the *Ward* decision "destroyed" the fundamental premise behind Ninth Circuit authority finding that the "bad faith" claim is preempted in ERISA-plan cases. *See id.* at 9–12.

As Plaintiff points out, there are at least a few trial courts which have determined that *Ward* "cracked" the "door of opportunity for an insured to proceed under state law ..." despite ERISA. *Hill v. Blue Cross Blue Shield of Alabama,* 117 F.Supp.2d 1209, 1211–13 (N.D.Ala.2000); *see Gilbert v. Alta Health & Life Ins. Co.,* 122 F.Supp.2d 1267, 1271–73 (N.D.Ala. 2000); *Lewis v. Aetna U.S. Healthcare, Inc.,* 78 F.Supp.2d 1202, 1213–15 (N.D.Okla.1999).[4] These courts have relied heavily on the principle that any state law "regulates insurance" if it is directed principally at the insurance industry. Finding that the "bad faith" claim under Alabama and Oklahoma law had been applied *only* in the insurance context, these courts decided that it "regulate[d] insurance." In so doing, these courts distinguished the laws of their own states from that of Mississippi, considered in the *Pilot*

---

**4.** *See also, e.g., Colligan v. UNUM Life Ins. Co. of America,* 2001 WL 533742, \*3 (D.Colo. 2001) (applying Colorado law); *Schneider v. UNUM Life Ins. Co. of America,* 2001 WL

530542, \*9–11 (E.D.Pa.2001) (excepting Pennsylvania statutory insurance claims for same reasons).

*Life* decision. *See, e.g., Hill,* 117 F.Supp.2d at 1211–12.

On the other hand, several other courts have explicitly rejected any conclusion that the *Ward* decision worked any such "alteration" in the decisional calculus that had been outlined by *Pilot Life* and its progeny. As a result, these courts have concluded that "bad faith" insurance claims remain preempted under ERISA, notwithstanding the clarification of this analysis presented by the Court in *Ward. See, e.g., Nelson v. Unum Life Ins. Co.,* 1999 WL 33226241, \*2 (N.D.Cal.1999); *Bridges v. Provident Life & Accident Ins. Co.,* 121 F.Supp.2d 1369, 1371–73 (M.D.Fla.2000); *Hardy v. Welch,* 135 F.Supp.2d 1171, 1184 (M.D.Ala.2000);[5] *Clancy v. Employers Health Ins. Co.,* 101 F.Supp.2d 463, 465–67 (E.D.La.2000); *Nations Personnel of Texas, Inc. v. American Medical Security,* 2000 WL 341256, \*2 (N.D.Tex.2000); *see also Chilton v. Prudential Ins. Co. of America,* 124 F.Supp.2d 673, 677–84 (M.D.Fla.2000) (state unfair competition statute preempted).

These cases stand for the proposition that *Ward* does not change or override existing precedent holding that state law implied covenant claims are preempted by ERISA and not excepted by the saving clause. *See, e.g., Bridges,* 121 F.Supp.2d at 1371–73; *Clancy,* 101 F.Supp.2d at 466–67; *Nations Personnel,* 2000 WL 341256 at \*2; *Chilton,* 124 F.Supp.2d at 680–84. Even more directly, one Northern District court has distinguished the *California*

claim of "bad faith" under contract, pointing out that in California this claim is *not* explicitly or wholly limited to the insurance contract context (although this claim has not yet been applied as a *tort* outside that context). *See Nelson,* 1999 WL 33226241 at \*2 (citations omitted) (applying California law).

## C. Application to the Present Case

■ This Court agrees with the latter category of cases: i.e., those finding that the *Ward* decision merely *applied* (and perhaps *clarified*) the criteria established by *Pilot Life* for determining whether a state law is exempted from preemption by the ERISA saving clause, *Ward* did not *transform* that legal analysis in a manner which would require that decisions relying on *Pilot Life* be reconsidered.[6] This Court finds an insufficient basis to depart from the clearly established line of precedent holding that "bad faith" claims are preempted by ERISA.

Specifically, *Ward* did not alter the first step of the two step *Metropolitan Life* analysis applied in *Pilot Life,* which asks whether a state law "regulates insurance" as a matter of common sense. As it was in *Pilot Life,* this remains a question of whether the law at issue is "specifically directed" at the insurance industry. *See Pilot Life,* 481 U.S. at 50, 107 S.Ct. 1549. Though *Ward* also described the test as asking whether a law "homes in on," or is "directed" at the insurance industry, these were mere re-statements of the same test,

**5.** It is perhaps notable that the *Hardy* decision is also from an Alabama district court, and presumably applies the same "bad faith" claim as was found *not* to be preempted by the courts in *Gilbert,* 122 F.Supp.2d at 1272–73, and *Hill,* 117 F.Supp.2d at 1211–13.

**6.** As was the case in *Pilot Life,* in *Ward,* and in the many Ninth Circuit cases describing the effect of the ERISA saving clause (e.g., *Bast, Parrino,* and *Kanne* ), in this case there is no

dispute that the "bad faith" claim at issue "relate[s] to" a plan governed by ERISA. Accordingly, the claim will be preempted by ERISA unless it is saved from preemption as a California law which "regulates insurance." As the Supreme Court has noted, common-law rules developed by decisions of state courts are "State law" for purposes of ERISA. *See Ward,* 526 U.S. at 367 n. 1, 119 S.Ct. 1380; *Pilot Life,* 481 U.S. at 48 n. 1, 107 S.Ct. 1549; 29 U.S.C. § 1144(c)(1).

and indeed the Court in *Ward* specifically cited with approval both the holding and the specific language of *Pilot Life* on this issue. *See Ward*, 526 U.S. at 368, 119 S.Ct. 1380 ("The rule thus appears to satisfy the common-sense view as a regulation that homes in on the insurance industry and does 'not just have an impact on [that] industry.'") (quoting *Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549).

Accordingly, for the same reason(s) that the Court in *Pilot Life*, and the Ninth Circuit in decisions subsequent thereto, determined that as a matter of common sense the Mississippi and California common-law "bad faith" claims are not state laws which "regulate insurance," this "common sense" analysis is unchanged by the *Ward* decision, and still leads to the conclusion that the California implied covenant claim is not a "State law" which "regulates insurance." Namely, this claim is not "specifically directed toward the [insurance] industry." *Kanne*, 867 F.2d at 494 (citing *Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549). As was the case in *Pilot Life*, its application has been wholly or largely *limited* to insurers (at least in terms of

tort *remedies* ), but "the roots of this law are firmly planted in the general principles of [California] tort and contract law." *Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549.[7] The United States Supreme Court declined, in *Ward*, to "bracket" the California "notice-prejudice" rule with the "bad faith" claim considered in *Pilot Life. See Ward*, 526 U.S. at 369, 119 S.Ct. 1380. This Court similarly declines to link the two types of claims together. Therefore, *Ward* has not changed this case law as to the "common sense" application of the saving clause.

Nor has *Ward* undermined the precedential value of *Pilot Life* or its progeny (e.g., *Bast, Parrino,* and *Kanne* ) as to the application of the McCarran–Ferguson factors to the California "bad faith" tort. In *Pilot Life*, the Court specifically applied each of these factors to "bad faith" common law claims, and determined that at most only the third of these factors suggested that these were claims which might be said to "regulate insurance." *See Pilot Life*, 481 U.S. at 50–51, 107 S.Ct. 1549. *No* part of *Ward* in any way calls this finding into question.[8] "*Ward* does not

---

**7.** *See, e.g., Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 683, 254 Cal.Rptr. 211, 765 P.2d 373 (1988) (" 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' ") (quoting Restatement (Second) of Contracts § 205); *PPG Industries, Inc. v. Transamerica Ins. Co.*, 20 Cal.4th 310, 314, 84 Cal.Rptr.2d 455, 975 P.2d 652 (1999) ("Implied in every contract is a covenant of good faith and fair dealing ...."). As one court has observed, California courts "have restricted bad faith principles [as applied to tort *remedies* therefor] to the insurance context but the truth is that courts have consistently acknowledged that there is room, even if exceedingly small, for this doctrine in other contexts which simply have not yet come before the courts." *Nelson*, 1999 WL 33226241 at *2. *See, e.g., Cates Construction, Inc. v. Talbot Partners*, 21 Cal.4th 28, 43, 86 Cal.Rptr.2d 855, 980 P.2d 407 (1999) ("*At present,* this court recognizes only one exception to that

general rule [that only contract remedies are available for breach of implied covenant of good faith and fair dealing]: tort remedies are available for a breach of the covenant in cases involving insurance policies.") (emphasis added).

**8.** Nor is this Court persuaded by Plaintiff's "flip side" theory, wherein Plaintiff argues that because *Humana Inc. v. Forsyth*, 525 U.S. 299, 307–12, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999) implied that a common-law bad faith claim against an insurer under Nevada law is among those laws "regulating insurance" which are protected from non-express invalidation or impairment under the McCarran–Ferguson Act by laws which are not directly aimed at the business of insurance (in that case, a RICO claim), this means that in the context of ERISA preemption, such a claim must also be considered to "regulate insurance." *See* Opposition at 7. The *Huma-*

depart from this decisional line. Rather, it recalls and approves *Pilot Life*'s holding that ERISA displaces state causes of action." *Nelson*, 1999 WL 33226241 at *3 (citations omitted).

Finally, this Court concludes that Congress' intent for the ERISA statutes and civil enforcement scheme remains as strong a supporting argument for this conclusion as it was in *Pilot Life. See Pilot Life*, 481 U.S. at 54, 107 S.Ct. 1549; *Chilton*, 124 F.Supp.2d at 682 ("Moreover, even if the common sense approach and the McCarran–Ferguson factors had weighed in favor of finding that the statute 'regulates insurance,' this Court would, as directed by the Supreme Court in *Pilot Life*, look to the overall purpose ... and would be compelled to conclude that the state law cause of action ... is preempted by ERISA.").[9]

Accordingly, the Court concludes that Plaintiff's Eighth Claim for Relief, for tortious breach of the implied covenant of good faith and fair dealing, is preempted by ERISA. Because ERISA provides the exclusive scheme of claims and remedies for suits thereunder, this claim is barred as a matter of law. Therefore, Defendant's Motion to Dismiss is GRANTED, and the Eighth Claim for Relief is DISMISSED.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Dismiss pursuant to Rule 12(b)(6). The Eighth Claim for Relief in Plaintiff's FAC, for tortious breach of the implied covenant of good faith and fair dealing, is hereby DISMISSED, with prejudice.

*na* decision is wholly inapposite to the issues presented for purposes of this Motion.

9. Plaintiff curiously refers to this clear and explicit language in the *Pilot Life* opinion as mere "dicta," and criticizes the Ninth Circuit's *Kanne* opinion (based on a misreading thereof) for what is argued to be its over-reliance on this part of the *Pilot Life* opinion. *See* Opposition at 9–11. Presumably, Plaintiff hopes by this analysis to also undermine the substantial Ninth Circuit authority which has followed *Kanne* in finding "bad faith" claims preempted by ERISA. The Court is unpersuaded by Plaintiff's argument, however, either as to *Kanne* or as to any implications for its Ninth Circuit progeny. Nor does the Court agree with Plaintiff's characterization of this part of *Pilot Life*, which is based on a curious reading of footnote 7 of the *Ward* opinion. *See Nelson*, 1999 WL 33226241 at *2 n. 2 (same argument). If anything, footnote 7 only *reinforces* this Court's conclusion that *Ward* supports and extends the *Pilot Life* finding that a state law bad faith claim is preempted by ERISA. *See Ward*, 526 U.S. at 377 n. 7, 119 S.Ct. 1380. In no way does it suggest that *Kanne* was a misreading of *Pilot Life*.