In re Sukamto SIA fka Sukarman Sukamto, Debtor.

Guido Giacometti, Chapter 7 Trustee, Plaintiff,

v.

Arton Bermuda Limited, a British Virgin Island Corporation; Johanes Sjah Aka Johanes Syah; Suwardi Sukamto; Kwan Lim Chui Aka Paul Chui; Vincent Wee; USB AG; Electra Global, Ltd., a British Virgin Islands Corporation; Promax Global, Ltd., a British Virgin Islands Corporation, Defendants.

Bankruptcy No. 98–04912.
Adversary No. 00–00102.

United States Bankruptcy Court, D. Hawai'i.

Aug. 25, 2006.

Noah Fiddler, Honolulu, HI, for Debtor.

Alika L. Piper, Carisa L. K. Hee, Stephen M. Gelber, Gelber, Gelber, Ingersoll & Klevansky, Jared N. Kawashima, Jeannie H. Jang, Ke–Ching Ning, Stephen A. Jones, Valerie M. Kato, Ning Lilly & Jones, Honolulu, HI, Colin Cohen, Boase Cohen & Collins, Wanchai, Hong Kong, Imran Hamid Khwaja, Michelle Jeganathan, William John Munden Ricquier, Tan Rajah & Chean, Singapore, for Plaintiff.

*MEMORANDUM OPINION CONCERNING UBS AG'S MOTION TO DISMISS TRUSTEE'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT AND, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT FILED ON MAY 11, 2006*

LLOYD KING, Bankruptcy Judge.

## I. INTRODUCTION

This is an adversary proceeding in bankruptcy. Plaintiff ("trustee") is the trustee in the underlying bankruptcy case, in which the debtor is Sukamto Sia ("Sia"), an individual. The remaining active defendants are UBS AG ("UBS"), a Swiss banking institution doing business in various countries, including Singapore and the United States, and subject to the jurisdiction of the Federal Deposit Insurance Corporation, and Vincent Wee ("Wee"), an individual employed at the Singapore branch of UBS at some, but not all, relevant times.

Before the court is the motion of UBS to dismiss 10 of the 11 counts in Plaintiff's Second Amended and Supplemental Complaint("second amended complaint") Wee has filed a joinder in the UBS motion. The second amended complaint alleges that UBS and Wee assisted the debtor, Sia, in money laundering and in concealing and misappropriating property from creditors and from the bankruptcy estate. This was done by means of bank accounts and banking transactions in the names of fictitious and actual entities, which were either owned or controlled by Sia.

The motion was heard on June 22, 2006. Plaintiff was represented by Ke–Ching Ning and Stephen A. Jones, of Ning Lilly & Jones. UBS was represented Walter C. Davison, Derek R. Kobayashi, and Donna H. Kalama, of Goodsill Anderson Quinn &

Stifel. Wee was represented by David C. Farmer, who appeared telephonically.

## II. BACKGROUND

Sia, a resident of Singapore, commenced the underlying bankruptcy case by filing a voluntary chapter 11 reorganization petition on November 6, 1998. Sia was a chapter 11 debtor in possession pursuant to 11 U.S.C. §§ 1101(1) and 1107, until February 10, 1999, when plaintiff was appointed reorganization trustee. The case was converted to a chapter 7 liquidating bankruptcy on June 4, 1999. After conversion to chapter 7, plaintiff continued as liquidation trustee.

The trustee in bankruptcy, plaintiff in this adversary proceeding, filed an earlier adversary proceeding, objecting to Sia's discharge in bankruptcy. (Adversary Proceeding No. 00–00016, in the United States Bankruptcy Court for the District of Hawaii.) On October 24, 2000, a stipulated judgment was entered, denying Sia a discharge in bankruptcy. (Dkt. No. 54, A.P. No. 00–00016.)

During the course of the bankruptcy case, Sia was arrested at a meeting of creditors, convicted of bankruptcy fraud, served a prison sentence, and, upon his release, was deported from the United States. A condition of his release from prison was payment of $2,000,000 to the trustee. That sum was paid.

Both before and during his incarceration, Sia repeatedly relied on his constitutional privilege against self-incrimination. Other proceedings related to the underlying bankruptcy case indicate that Sia used many entities and bank accounts in foreign countries to control his assets and to frustrate the efforts of creditors and the trustee in bankruptcy to locate those assets.[1]

---

1. Sia owned a bank, The Bank of Honolulu.

He was the controlling owner, chief executive

The difficulties and complexities of administration of the Sia estate have presented the trustee with unusual challenges.

The original complaint in this adversary proceeding was filed on November 3, 2000. That complaint sought recovery of a $2,000,000 deposit made by Sia toward the purchase of a Gulfstream aircraft. By order dated October 6, 2000, in the Sia bankruptcy case (Dkt. no. 1054), Sia was ordered to turn over that deposit, and other property, to the trustee. Sia had not complied with the order by the date of filing of the original complaint. That complaint alleged that an interest in the deposit was not listed in Sia's bankruptcy schedules, and that Sia testified untruthfully at his bankruptcy meeting of creditors that the deposit had been forfeited. UBS and Wee were not named defendants in the original complaint.

A first amended complaint was filed on May 6, 2002, with an expanded list of defendants, including UBS and Wee. In the first amended complaint, the Gulfstream deposit was still the focal point, with added allegations that UBS and Wee were active participants in Sia's efforts to conceal the $2,000,000 deposit from the bankruptcy trustee and creditors.

Before the April 12, 2006, filing of the second amended complaint, there were contempt proceedings against the incarcerated Sia. Faced with the possibility of additional prison time, Sia caused $2,000,000 to be paid to the trustee. Upon completion of his original prison sentence, Sia was released from prison and deported from the United States. Payment of $2,000,000 to the trustee resolved the effort to recover the Gulfstream deposit, except for collateral requests for interest, fees, costs, and punitive damages. Those remain pending. (Second amended complaint, ¶ 29)

The second amended complaint greatly expands the subject matter of this litigation. The focus is now upon certain of Sia's banking and alleged money laundering transactions, which are supposed to have involved Wee, or UBS, or both of them. Some discovery has been conducted by the trustee, who has a pending motion to compel discovery. The trustee has been unable to take the deposition of Defendant Wee.

### III. FACTS

The second amended complaint, which is the subject of this motion to dismiss, was filed on April 12, 2006. For purposes of the motion to dismiss, the facts alleged in that pleading must be assumed to be true.

According to the second amended complaint, the Singapore High Court, on October 24, 1998, issued an injunction freezing Sia's assets, whether in his name or not, up to a total value of $17,649,601.64. Sia and persons having notice of the injunction are prohibited from removing, dealing with, disposing of, or diminishing the value of such assets.

Shortly thereafter, on November 6, 1998, Sia filed his voluntary chapter 11 petition in Honolulu, Hawaii.

When Sia filed his voluntary chapter 11 petition, Wee was employed in Singapore by a Bank of America branch, known as the Private Bank. After Sia filed his bankruptcy petition, in November, 1998, UBS

officer, and chairman of the board of directors. On October 13, 2000, the Federal Deposit Insurance Corporation was appointed receiver for the bank. See, Article I, ¶¶ 1 and 5, Agreement Concerning Joint Prosecution and Defense of Claims, Cooperation in Litigation, and Sharing of Proceeds, an agreement between the trustee and the FDIC, approved by order entered June 26, 2001 (Dkt. No. 1648) The agreement is Exhibit A to the trustee's memorandum in support of motion to approve the agreement. (Dkt. No. 1467)

acquired the Private Bank. The date is given only as an unspecified date during the first half of 1999. With that acquisition, Wee became an employee of UBS. It is not alleged that UBS had any dealings involving Sia before acquiring the Private Bank. Because the date of UBS' acquisition of the Private Bank is not stated with specificity, it is unclear just which banking transactions involved UBS. However, the complaint asserts that, at relevant times, Wee and UBS were aware of both the Singapore High Court's injunction and the automatic stay of 11 U.S.C. § 362(a) in Sia's United States bankruptcy case.

The activities of which plaintiff complains include:

In 1999, defendants assisted Sia in the postpetition laundering of $1.25 million through an account in the name of Skymaster. (¶ 24, second amended complaint)

In May, 2000, Wee provided Sia's girlfriend with a banker's introduction letter, on UBS letterhead, falsely stating that she was a valued customer of UBS, with access to substantial funds. This letter was used to facilitate laundering $1 million through an account in her name at the Bellagio Casino in Las Vegas. (¶ 30, second amended complaint)

Wee, in May, 1998, and April, 1999, assisted Sia in his concealment scheme by withdrawing large cash sums from Sia alias accounts, for Sia's use. (¶ 33, second amended complaint)

Sia needed the assistance of a bank and bank officials to create the various accounts necessary to his concealment scheme. (¶ 40, second amended complaint)

Other accounts used in the scheme may be identified by further discovery. (¶ 22, second amended complaint) There are 11 counts in the second amended complaint, numbered I through XII, but lacking a count X. The motion does not seek dismissal of count IV. The counts are:

I —Avoidance of unauthorized postpetition transfers (11 U.S.C. § 549)

II —Avoidance of prebankruptcy fraudulent transfers (11 U.S.C. § 544 and Haw.Rev.Stat. Ch. 651C)

III —Recovery from transferees (11 U.S.C. § 550)

IV —Turnover of property of the estate (11 U.S.C. § 542) and an Accounting

V —Conspiracy to conceal and to divert property of the estate

VI —Conspiracy to convert property of the estate

VII —Money had and received

VIII —Unjust enrichment

IX —Constructive trust

X —The second amended complaint does not contain a count X.

XI —Avoidance of postpetition fraudulent transfers (Haw.Rev.Stat. Ch. 651C)

XII —Aiding and abetting fraud against the bankruptcy estate

## IV. DISCUSSION

### A. Overview

As the title, "Second Amended and Supplemental Complaint" suggests, the focus of this litigation has changed. Originally, the trustee sought to recover Sia's $2 million deposit toward the purchase of an airplane. Sia caused $2 million to be paid to the trustee, so that issue is mostly resolved.

The new focus of this adversary proceeding is the banking relationship between Sia and Wee and, later, among Sia, Wee, and UBS. The complaint alleges, with considerable detail, that the relationship helped Sia to avoid the attempts of the trustee in bankruptcy to reach assets which, upon the filing of Sia's bankruptcy

petition, became property of the estate pursuant to 11 U.S.C. § 541(a).

In Count II of the second amended complaint, the trustee alleges the making of fraudulent transfers by Sia, of his own property, before the filing of Sia's bankruptcy petition.

However, the use of the terms "fraud" and "fraudulent," in other counts, is confusing. Fraud usually involves some written or verbal communication with a victim, followed by the victim's detrimental reliance. Such allegations are absent. Fraudulent conveyances are transfers by a debtor, of the debtor's own assets. The purpose of the transfers is to put those assets out of the reach of creditors. Before he filed his bankruptcy petition, Sia was dealing with his own property and may have made fraudulent transfers. However, after the petition was filed, Sia's nonexempt assets became property of the bankruptcy estate under 11 U.S.C. § 541(a). Assets belonging to the bankruptcy estate did not and do not belong to Sia. The second amended complaint fails to demonstrate how Sia could make fraudulent transfers of assets that were not his.

This concern over the possible misapplication of the terms "fraud" and "fraudulent" is new. It was not raised in the parties memoranda or discussed at the hearing on the motion. Accordingly, the trustee will be given an opportunity to amend the relevant counts of the second amended complaint.

The confusion is compounded by use of the terms "Sia's assets" and "Sia funds" in the second amended complaint. The trustee states in his memorandum in opposition to the motion to dismiss (p.25, fn.31), that such terms refer to property of the bankruptcy estate. Future pleadings should be more accurate about ownership of relevant property.

## B. Consideration of a motion to dismiss

A motion to dismiss under Fed.R.Civ.P. 12(b)(6), tests the legal sufficiency of the claims asserted in the complaint. *Jabour v. CIGNA Healthcare of California, Inc.,* 162 F.Supp.2d 1119, 1121 (C.D.Cal.2001). The rule must be read together with Fed. R.Civ.P. 8(a), made applicable by Fed. R. Bankr.P. 7008, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.,* citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedures* § 1356 (1990). A court will dismiss a complaint only in extraordinary cases and only if it appears that the "complaint lacks a 'cognizable legal theory' " or there is an absence of "sufficient facts to support a cognizable legal theory." *Gen–Probe Inc. v. Center for Neurologic Study,* 853 F.Supp. 1215, 1216–17 (S.D.Cal.1993) citing *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). In determining whether there is a cognizable legal theory or facts sufficient to support a legal theory, the court "must construe the complaint in the light most favorable to the plaintiff." "All material allegations in the complaint" must be accepted as true, including reasonable inferences that may "be drawn from them." *In re Cases Filed by DIRECTV, Inc.,* 344 F.Supp.2d 647, 651 (D.Ariz.2004) (citation omitted). If a defect appears on the face of a complaint, the court "may not consider extraneous material in testing its legal adequacy." *Gen–Probe Inc. v. Center for Neurologic Study,* 853 F.Supp. at 1217.

## C. Count I—Unauthorized Postpetition Transfers—11 U.S.C. § 549

■ Count I of the second amended complaint seeks to avoid postpetition transfers of property of the bankruptcy estate. This would apply to the funds

belonging to the bankruptcy estate, which were allegedly transferred or laundered through accounts at UBS. The transfers are avoidable, under 11 U.S.C. § 549, if they were made without court approval. Since Sia's bankruptcy case is still open, § 549(d) places a two-year time limit on the avoidance of postpetition transfers.[2]

UBS argues that count I is time barred. The transfers are alleged to have occurred in 1999 and 2000. The second amended complaint was filed on April 12, 2006, almost six years after the last transfer.

However, it is still necessary to determine whether or not that complaint relates back to the date of the original complaint or whether the statutes of limitation have been tolled, by agreement, court order, or equitably. If either relation back or tolling applies, the trustee may be able to overcome the apparently untimely filing of the second amended complaint:

### 1. *Relation Back*

■ Under Fed.R.Civ.P. 15(c)(2), made applicable in this adversary proceeding by Fed. R. Bankr.P. 15, an amended complaint will relate back to the date of the original complaint when "the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

There can be no relation back for the relief newly sought in the second amended complaint. The $2 million judgment sought in the original and first amended complaints was satisfied in September, 2004, when that sum was paid to the trustee. Second amended complaint, ¶ 29. While the second amended complaint still asserts claims for interest, attorneys' fees,

and costs relative to the recovery of the $2 million, those amounts are directly related to the Gulfstream aircraft deposit.

■ All of the other recoveries sought in the second amended complaint are new to this adversary proceeding. If an earlier complaint does not fairly warn a defendant of new relief to be sought, a subsequent pleading cannot relate back. *In re Cellular Exp. Of Arizona, Inc.,* 275 B.R. 357, 363 (Bankr.D.Ariz.2002). UBS and Wee are named defendants in the first amended complaint, but not in connection with the many new claims added to the second amended complaint.

### 2. *Equitable tolling*

■ The trustee argues that, even if the new matters in the second amended complaint do not relate back, the doctrine of equitable tolling should save the second amended complaint from the statutory time limits. "Dismissal on statute of limitations grounds can be granted pursuant to Rule 12(b)(6) only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *In re Cases Filed by DIRECTV, Inc.,* 344 F.Supp.2d at 651.

■ "[E]quitable tolling 'permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.'" *Wheeldon v. Monon Corp.,* 946 F.2d 533, 536 (7th Cir.1991) (citation omitted).

■ In order for equitable tolling to apply, the plaintiff must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some ex-

---

**2.** 11 U.S.C. § 549(d) provides:

An action or proceeding under this section may not be commenced after the earlier of—(1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed.

traordinary circumstances stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005).

UBS argues that the trustee has not carried his burden of demonstrating due diligence in discovering or pursuing claims in his second amended complaint.

■■ It is not necessary for a complaint specifically to plead equitable tolling.[3] A court must determine "whether the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." *Cervantes v. City of San Diego,* 5 F.3d 1273, 1277 (9th Cir.1993).

■ The second amended complaint contains sufficient allegations to show the potential applicability of equitable tolling. The essence of the second amended complaint is that UBS and Wee assisted Sia in the concealment of the bankruptcy estate's assets through numerous international banking transactions.

■ The second amended complaint does not directly address the trustee's diligence in discovering the concealment, but it is unnecessary to require amendment of the complaint to add allegations of diligence. The reason is that the issue of whether a claim has been equitably tolled is a question of fact and "ordinarily requires reference to matters outside of the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint alone." *Cervantes v. City of San Diego,* 5 F.3d 1273, 1277 (citations omitted). Because the issue of equitable tolling is fact specific, it is more appropriately determined on a motion for summary judgment, rather than a motion to dismiss. *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th Cir.1995).

UBS relies upon *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406 (9th Cir.1987), in support of its argument that the second amended complaint lacks sufficient allegations to support equitable tolling. *Volk* offers no such support. The court of appeals affirmed a district court's summary judgment, which found that plaintiffs' claims were barred by the statute of limitations. *Volk* was a securities fraud action brought by tax shelter limited partners in entities supposedly formed to exploit coal leases. The plaintiffs expected $1.75 in actual dollar tax savings, for each dollar invested. The issue was whether the statute of limitations started to run in 1979, when the investors received annual reports indicating that the promised goals were unlikely to be achieved, or in 1982, when IRS disallowed the limited partners' claimed income tax deductions. Affirming the district court, the court of appeals held that the statute of limitations started to run with the annual report, which gave the investors actual or inquiry notice that they had claims. 816 F.2d at 1412. That the defendants did not discover defendants' use of sham corporations as part of the scheme made no difference, because "there is no indication that [defendant] organized these corporations to conceal the fraud." 816 F.2d at 1416. By contrast, the second amended complaint in the present case alleges that sham entities were organized and used for the purpose of concealing property of Sia and of the bankruptcy estate.

The issue of equitable tolling will, if necessary, be determined at a future date.

---

**3.** Statute of limitations is an affirmative defense. *See* Rule 8, Fed.R.Civ.P., made applicable by Rule 7008, Fed. R. Bankr.P. Requiring a plaintiff to plead equitable tolling in the initial pleading would require the plaintiff to anticipate a defendant's response.

The context will be either a motion for summary judgment or a trial or other evidentiary hearing.

The motion to dismiss Count I will be denied.

### D. Count II—Prebankruptcy Fraudulent Transfers—11 U.S.C. § 544(b) and Haw.Rev.Stat. Ch. 651C

Count II seeks to avoid prebankruptcy transfers by Sia, which are fraudulent under Hawaii law.[4] The trustee's use of the Hawaii Uniform Fraudulent Transfer Act (H.R.S. Chapter 651C) to avoid prepetition transfers is authorized by § 544.[5]

■ "Section 544(b) permits the trustee to step into the position of an actual, existing unsecured creditor and assert that person's rights, if any, under state law, to avoid a prebankruptcy transfer." 1 *Collier on Bankruptcy* ¶ 1.03[8][a] (15th ed., 2006).

■ Count II fails to state a claim for relief, in that it fails to give notice of the transaction or transactions sought to be avoided and to identify the "actual creditor holding an unsecured claim", required by § 544(b). This adversary proceeding has been pending long enough for the trustee to know or to be able to learn of such an actual creditor.

UBS also argues that count II is time barred. The limitation period for count II is 2 years after entry of the November 6, 1998, order for relief, as provided by § 546(a)(1)(A).[6] As discussed under count I, the issue of equitable tolling is not appropriately considered in the context of a motion to dismiss.

The motion to dismiss count II will be granted, with leave to amend.

### E. Count XI—Postpetition Fraudulent Transfers—Haw. Rev. Stat. Ch.651C

Count XI is discussed out of numerical order because, like count II, it seeks the avoidance of fraudulent transfers. Count II seeks to avoid prebankruptcy transfers. Count XI seeks to avoid postpetition transfers.

Count XI seeks to avoid allegedly fraudulent transfers, which occurred after Sia filed his petition, under Hawaii's version of the Uniform Fraudulent Transfer Act, Haw.Rev.Stat. Chapter 651C. As to such transactions, the trustee has standing to sue under 11 U.S.C. § 323(b).

■ Count XI appears to be what the parties characterize as a "private cause of action." The trustee is attacking allegedly fraudulent postpetition transfers of property of the bankruptcy estate. In this

---

4. The second amended complaint does not request fraudulent transfer avoidance under 11 U.S.C. § 543, the Bankruptcy Code's separate provision for dealing with fraudulent conveyances.

5. "Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the title or that is not allowable only under section 502(3) of this title" 11 U.S.C. § 544(b)(1).

6. 11 U.S.C. § 546(a) states:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
> (1) the later of—
> (A) 2 years after the entry of the order for relief; or
> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
> (2) the time the case is closed or dismissed.

situation, the trustee would not be relying upon the existence of a creditor defined in § 544(b)(1). A bankruptcy trustee's standing to sue is based upon statute and rule. Under 11 U.S.C. § 323(b), "A trustee in a case under this title has capacity to sue and be sued." Under Fed. R. Bankr.P. 6009, " With or without court approval, the trustee or debtor in possession may . . . commence and prosecute any action or proceeding in behalf of the estate before any tribunal."

■ The Hawaii statute of limitations on fraudulent transfer claims is four years. Haw.Rev.Stat. § 651C–9. If the last transfer at issue occurred in 2000, this second amended complaint, filed in April, 2006, is outside of the limitation period.

As noted in the discussion of count I, the new allegations in the second amended complaint do not relate back, but the issue of equitable tolling of the statute of limitations remains to be determined, in a context such as a motion for summary judgment, where matters outside the complaint may be considered.

■ Another problem with count XI is that the Uniform Fraudulent Transfer Act does not appear to be applicable to these alleged misappropriations of property of a bankruptcy estate. The second amended complaint asserts that Sia, Wee, and UBS have been laundering and concealing funds which properly belong to the bankruptcy estate. Property of a bankruptcy estate under 11 U.S.C. § 541(a) is not property of the debtor or debtor in possession. However, the UFTA only applies to transfers by a debtor (in the general, not the bankruptcy sense) of the debtor's own property.

A fraudulent transfer is a transfer made by a debtor. Haw.Rev.Stat. § 651C–4(a). The "transfer" must be of an "asset". Haw.Rev.Stat. § 651C–1. The term "as-

set" means property of a debtor. Haw. Rev.Stat. § 651C—1.

The postpetition transfers described in count XI of the second amended complaint were allegedly made by Sia, defendants, and others. None of them were UFTA debtors making transfers making transfers of their own assets.

No authorities have been provided, and the court has found none, indicating the ability of a bankruptcy trustee to use the UFTA to avoid postpetition misappropriation, theft or conversion of property of a bankruptcy estate. The absence of authorities supports the conclusion that postpetition transfers are not within the ambit of fraudulent conveyance legislation.

■ Other remedies are available to deal with the conduct alleged by the trustee. Misdeeds with property of a bankruptcy estate may be criminal under Chapter 9, Title 18, United States Code. Unauthorized transfers of estate property are avoidable by a trustee under 11 U.S.C. § 549, the subject of count I of the second amended complaint. Under § 549, it is unnecessary to prove the usual requirements of fraudulent transfers, such as intent, reasonably equivalent value, insolvency, and the like.

Count XI fails to state a claim. The motion to dismiss will be granted, with leave to amend. Leave to amend is being given, because the issue of the applicability of the UFTA to postpetition misappropriation or concealment of property of a bankruptcy estate has not been previously argued by the parties.

### F. *Transferee liability (Count III)*

■ To the extent that the trustee is able to avoid prepetition fraudulent conveyances under § 544(b)(1) or postpetition transfers under § 549, the value of the property transferred is recoverable from

transferees. 11 U.S.C. § 550.[7] Sections 544(b)(1) and 549 determine only which transactions are avoidable. Section 550 determines who suffers the consequences of avoidance. If no one has transferee liability under § 550, there may be no adverse consequences of an "avoidable" transfer.

■ UBS argues that it is not a § 550 transferee. The reason given is that it was a mere conduit and never had dominion and control over funds deposited into the relevant accounts. UBS' argument is based upon *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir.1988): "Although the Bankruptcy Code does not define 'transferee', and there is no legislative history on the point, we think the minimum requirement of status as a 'transferee' is dominion over the money or other asset, and the right to put the money to one's own purposes."

■ UBS' argument that it lacked dominion and control over the funds in the subject bank accounts is inaccurate. Once a deposit is made, the funds are the property of the bank, and the depositor is a creditor of the bank. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); *In re Richmond Produce Company, Inc.*, 195 B.R. 455, 461–62 (N.D.Cal.1996). *Citizens Bank*, the Court held that a bank's admin-istrative freeze on a debtor's account did not violate the automatic stay of 11 U.S.C. § 362(a)(6), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." A bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor ...." 516 U.S. at 21, 116 S.Ct. 286.

In *Richmond Produce*, a bank was found to have dominion and control over deposited funds and to be a § 550(a) initial transferee of those funds.

Still, courts are cautious about imposing transferee liability upon banks. In *Bonded Financial Services*, the court observed:

The potential costs of monitoring and residual risk are evident when the transferees include banks and other financial intermediaries. The check-clearing system processes more than 100 million instruments every day; most pass through several banks as part of the collection process; each bank may be an owner of the instrument or agent for purposes of collecting at a given moment. Some of these instruments represent funds fraudulently conveyed out of bankrupts, yet the cost of checking back on the earlier transferors would be staggering.... Exposing financial intermediaries and couriers to the risk of

---

7. 11 U.S.C. § 550 provides:
 (a) ... to the extent that a transfer is avoided under section 544 ... 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or
 (2) any immediate or mediate transferee of such initial transferee.
 (b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
 (2) any immediate or mediate good faith transferee of such transferee.
 The second amended complaint does not indicate whether UBS is alleged to be an initial transferee under subsection (a)(1) or an immediate or mediate transferee under subsection (a)(2), so it is unnecessary to consider that important distinction.

disgorging a "fraudulent conveyance" in such circumstances would lead them to take precautions, the costs of which would fall on solvent customers without significantly increasing the protection of creditors. 838 F.2d at 893.

■■■ The conduit defense against transferee liability under § 550 is a court created equitable defense. As such, it is unavailable to transferees who have not acted in good faith. "In order for a court to ignore the literal meaning of section 550(a)(1) on equitable grounds and treat a recipient of property from a debtor as a 'mere conduit' rather than an initial transferee, the recipient must have acted in good faith." 5 *Collier on Bankruptcy* ¶ 550.02[4][b] (15th ed.2002).

■■■ "Good faith" presents an interesting anomaly under § 550. Under subsection 550(b), good faith is a defense for immediate and mediate transferees only. Good faith is not a statutory defense under § 550(a) for initial transferees. However, good faith is required, if an initial transferee wishes to take advantage of the "conduit" exception.

The second amended complaint alleges that UBS and Wee, with knowledge of the Singapore court stay and the automatic stay of the United States Bankruptcy Code, assisted Sia in concealment and money laundering. Those allegations are sufficient, for purposes of a motion to dismiss, to overcome the claim of UBS that it was a "mere conduit."

Transferee liability under § 550 only arises when transfers are avoided under other sections of the bankruptcy code. Therefore, Count III need not describe the transfers to be avoided. If, in the course of this adversary proceeding, transactions under the Bankruptcy Code sections listed in § 550(a) are avoided, the trustee must then prove that defendants have transferee liability as to those transactions.

The motion to dismiss Count III will be denied.

### G. *Civil Conspiracy to defraud the bankruptcy estate and the trustee (Count V)*

■■■ The second amended complaint alleges in Count V that the defendants conspired to conceal and divert property of the estate by laundering funds through various accounts, with the intent "to defraud the bankruptcy estate and the Trustee ...." Second amended complaint, ¶ 57.

UBS argues that count V should be dismissed for failure to plead fraud with particularity, as required by Fed.R.Civ.P. 9(b): "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

■■■ In fact, the second amended complaint does not appear to involve fraud. Fraud is misrepresentation or concealment, which causes the plaintiff to act to the plaintiff's detriment. Normally, there will be some sort of communication between the parties, which will lead to the plaintiff's detrimental reliance. The second amended complaint does not allege any communication between defendants and the trustee or any reliance by the trustee upon any misrepresentation or concealment by defendants. The trustee seems to use the term "fraud" as a synonym for dishonesty, but that is not the legal meaning of "fraud".

The motion to dismiss count V will be granted, with leave to amend. The question of whether or not some form of fraud is alleged in the second amended complaint has not been discussed by the parties.

## H. Conspiracy to convert property of the estate (Count VI)

Count VI alleges that defendants conspired to convert the laundered funds for their own benefit and enjoyment or for that of a third person. UBS moves for dismissal of count VI arguing that: (1) the trustee lacks standing; (2) the complaint fails to identify property of the estate; and (3) the trustee has failed to plead the alleged fraud with particularity.

 A cause of action for civil conspiracy is recognized in Hawaii. *See Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480 (9th Cir.1984). "A civil conspiracy is defined as a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Id.* at 1482 n. 3 (9th Cir.1984) (citation omitted). To assert a claim of civil conspiracy, the complaint must allege that the defendants had a duty and breached that duty. *Id.* Once a duty has been established, the plaintiff must prove that the conspirators "entered into an agreement to accomplish the objective of the conspiracy." *Id.* Proof of the existence of civil conspiracy must be "by clear, cogent and convincing evidence." *Id.*

### 1. Standing

 When a bankruptcy petition is filed, the trustee succeeds to the property of the estate under the provisions of 11 U.S.C. § 541(a)(1). He is a representative of the estate and has the capacity to sue and be sued under 11 U.S.C. § 323. He also "has the duty to liquidate the estate's property under the provision of 11 U.S.C. § 704(1)." *In re Peterson*, 163 B.R. 581, 583 (Bankr.D.Idaho 1993). "This property includes all causes of action the debtor could have brought outside bankruptcy." *In re Latin Inv. Corp.*, 168 B.R. 1, 4 (Bankr.D.Dist.Col.1993).

For purposes of the present bankruptcy adversary proceeding, the issue of the trustee's standing to attack alleged civil conspiracies turns on timing. The timing question is whether the activities of the conspirators occurred prebankruptcy or after Sia filed his petition.

 The debtor, Sia, is one of the alleged conspirators. Therefore, the doctrine of *in pari delicto* would prevent prebankruptcy claims against Sia and his co-conspirators from passing to the bankruptcy estate. Claims, if any, against prepetition co-conspirators of the debtor would belong to individual prebankruptcy creditors. *In re Gaudette*, 241 B.R. 491, 498 (Bankr.D.N.H.1999)

 As to postpetition activities of the debtor and co-conspirators, the result is different. The trustee has standing to sue, because the injury is to the bankruptcy estate. The property of a chapter 7 bankruptcy estate belongs to the trustee, not to the debtor. If the trustee's conspiracy claims are based upon postpetition activities of the conspirators, it does not matter whether or not the debtor is one of the conspirators. The debtor's postpetition unclean hands do not impair the ability of the trustee in bankruptcy to pursue the debtor and debtor's co-conspirators.

As noted above, timing—whether the trustee's claims are based upon prebankruptcy or postpetition activities of the conspirators—is critical. As to prebankruptcy conspiracies, the trustee lacks standing, and the motion to dismiss will be granted. As to postpetition conspiracies, the trustee has standing to sue on behalf of the estate. 11 U.S.C. § 323(b); Fed. R. Bankr.P. 6009.

### 2. Property of the estate

The argument of UBS that the trustee has failed to identify property of the estate

which has been concealed and converted by defendants has merit. The essence of the second amended complaint is that Sia, with the assistance of the defendants in this adversary proceeding, has deprived the bankruptcy estate of Sia's prebankruptcy assets, which became property of the bankruptcy estate upon the filing of his petition. 11 U.S.C. § 541(a).

The problem is that the second amended complaint is sometimes inartful in its allegations concerning property of the bankruptcy estate. For example, paragraph 23 alleges a conspiracy "to hide Debtor's assets from his bankruptcy estate ...." There would be no need to hide Sia's assets, property which lawfully belongs to Sia, from the trustee in bankruptcy. The trustee is concerned about Sia's prebankruptcy assets, which became property of the bankruptcy estate when Sia filed his petition. The trustee's failure to distinguish between Sia's assets and the estate's assets is repeated in the trustee's memorandum in opposition to the UBS motion to dismiss. (Trustee's memorandum, p. 25 n. 31)

This litigation is too far-reaching to overlook such a basic flaw. The second amended complaint must be amended to identify the property of the bankruptcy estate which the trustee seeks to recover or which is alleged to be the subject matter of a conspiracy to conceal.

### 3. *Pleading with particularity*

UBS also argues that the trustee has failed to plead the defendants' alleged fraudulent acts with particularity, as required by Fed.R.Civ.P. 9(b). Count VI does not allege fraud, so Rule 9(b) does not apply.

Count VI adequately pleads civil conspiracy, but lacks specificity concerning the distinction between property of the bankruptcy estate and property of Sia.

The motion to dismiss count VI will be granted, with leave to amend.

### I. *Count VII—Money had and received*

### *Count VIII—Unjust enrichment*

### *Count IX—Constructive trust*

The trustee does not appear to oppose dismissal of these counts. The opposition memorandum supplies no argument or authorities concerning the application of these theories to the subject banking transactions. The motion to dismiss will be granted as to counts VII, VIII, and IX.

### J. *Aiding and Abetting (Count XII)*

Count XII of the trustee's second amended complaint alleges that the conduct of UBS and Wee "constitute the aiding and abetting of the commission of an intentional tort (fraud) against the estate." Second amended complaint, ¶ 81.

The essence of liability for aiding and abetting an intentional tort is that the defendant—

> (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Neilson v. Union Bank of California, N.A.,* 290 F.Supp.2d 1101, 1118 (C.D.Cal.2003).

One argument of UBS in favor of dismissal of count XII is that the trustee lacks standing to pursue claims that belong to individual creditors. This argument overlooks the language of count XII, which states that the underlying tort is

fraud against the estate. This necessarily involves postpetition conduct of the defendants, as there was no bankruptcy estate before Sia filed his voluntary petition under chapter 11. *Hamilton Taft & Company v. Howard, Weil, Labouisse, Friedrichs Inc.,* 176 B.R. 895 (Bankr.N.D.Cal.1995), relied upon by UBS, involved a trustee unsuccessfully attacking prepetition activities. Where postpetition behavior injures the bankruptcy estate, the trustee has standing to sue on behalf of the estate. *In re Schwartz,* 954 F.2d 569, 573 (9th Cir. 1992) and *In re Natchez Corp. Of West Virginia,* 953 F.2d 184, 187 (5th Cir.1992). UBS also argues that it never had possession of or control over property of the bankruptcy estate. Again, UBS overlooks that fact that it had dominion over funds placed in its deposit accounts. *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 21, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) It was free to loan such funds to other bank customers or make other profitable use of the funds.

■ UBS is correct in arguing that count XII fails to plead fraud with particularity. The commission of fraud is the object of the conspiracy alleged in count XII. The second amended complaint contains a numerous examples of misconduct by Sia and persons and entities acting in concert with him. However, count XII fails to describe in sufficient detail which of the activities were part of the conspiracy and what fraudulent goal was the object of the conspiracy..

The motion to dismiss Count XII will be granted, with leave to amend.

## V. CONCLUSION

### A. Defendant Wee

Wee merely filed a joinder in the UBS motion to dismiss. No legal memorandum was filed for Wee, and his counsel did not present a separate argument at the hearing on the motion to dismiss. Wee is apparently a banker, but he is not a bank. For present purposes, that distinction is important only as to the UBS argument that it is a mere conduit, and not a transferee, of funds sought to be recovered by the trustee. That argument by UBS is not being accepted. Therefore, the order to be entered concerning this motion to dismiss will be equally applicable to Wee and to UBS.

### B. Timing

Because the motion to dismiss is being granted in part, a third amended complaint will be necessary. The form of the third amended complaint may be shaped by future discovery. Pending before the court is the trustee's motion to compel discovery. At the conclusion of argument on the motion to dismiss, counsel were advised that the discovery motion would be considered after a ruling on the motion to dismiss.

A tentative conclusion is that the discovery motion will be granted. The defenses raised by UBS and Wee require the trustee to have access to relevant information, even though access to such information may be difficult and expensive. After entry of the order concerning this motion to dismiss, the courtroom deputy will communicate with counsel and arrange a date for hearing of the trustee's motion to compel discovery. The purpose of this delayed consideration of the discovery motion is to give to the parties an opportunity to attempt develop a mutually acceptable discovery plan. They now know that the discovery motion, in substance, will be granted. Counsel will have a chance, before the upcoming hearing, to explore agreeable ways to minimize the substantial expenses and inconveniences that will accompany renewed discovery.

The to-be-scheduled hearing on discovery will also address the timing for the filing of the trustee's third amended complaint. The trustee will be given a period of time to conduct additional discovery. Limits on the filing of dismissal and summary judgment motions will be discussed. The consideration of dispositive motions before additional discovery would be wasteful.

## C. SUMMARY

Pursuant to the foregoing opinion, the rulings on the UBS motion to dismiss the second amended complaint will be:

Count I—Unauthorized postpetition transfers—11 U.S.C. § 549. The motion will be denied. There is no relation back as to claims newly made in the second amended complaint. Equitable tolling is not properly determined on a motion to dismiss. The second amended complaint adequately describes the transactions being attacked by the trustee.

Count II—Prepetition fraudulent transfers—11 U.S.C. § 544. The motion to dismiss will be granted, with leave to amend. The trustee must identify the prepetition transfers to be avoided and the actual creditor holding an unsecured claim.

Count III—Transferee liability—11 U.S.C. § 550. The motion to dismiss will be denied. The second amended complaint adequately pleads that UBS is a transferee, and not a mere conduit.

Count IV—Turnover of property of the estate under 11 U.S.C. § 542 and an accounting. The motion does not seek dismissal of Count IV.

Count V—Conspiracy to conceal and divert property, as part of a scheme to defraud the bankruptcy estate and the trustee. The motion to dismiss will be granted, with leave to amend. The second amended complaint does not plead fraud with particularity. Even if there was a conspiracy among Sia and the defendants, it is not clear that the purpose of the conspiracy was to defraud.

Count VI—Conspiracy to convert property of the estate. The motion will be granted, with leave to amend. The second amended complaint does not clearly distinguish between property of Sia and property of the bankruptcy estate. Fraud is not alleged, so there is no Fed.R.Civ.P. 9(b) issue. UBS had dominion and control over deposited funds.

Count VII—Money had and received. The motion to dismiss will be granted.

Count VIII—Unjust enrichment. The motion to dismiss will be granted.

Count IX—Constructive trust. The motion to dismiss will be granted.

There is no Count X in the second amended complaint.

Count XI—Uniform Fraudulent Transfer Act—Haw. Rev. Stat. Ch. 651C. The motion to dismiss will be granted, with leave to amend. The UFTA appears to have no application to postpetition dealings with property of a bankruptcy estate. It is unnecessary to consider equitable tolling in the context of a motion to dismiss.

Count XII—Aiding and abetting the commission of fraud against the bankruptcy estate. The motion to dismiss will be granted, with leave to amend. It is unclear what acts described in the second amended complaint are alleged to involve the commission of fraud, as opposed to some other form of misconduct.

An order will be entered, consistent with the foregoing opinion, granting in part and denying in part UBS's motion to dismiss.